IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

G'ESA KALAFI, f/n/a STANLEY FELTON,

    Plaintiff,

v.

LEBBEUS BROWN, TIM HAINES,
CRAIG TOM, TROY HERMANS and
SHANA BECKER,

    Defendants.

OPINION AND ORDER

16-cv-847-slc

On April 5, 2018, this court granted summary judgment to plaintiff G'esa Kalafi, f/n/a Stanley Felton on his claim that defendants retaliated against him in violation of his clearly established First Amendment rights when it punished him for writing an article in which he disparaged defendant Shana Becker and other unnamed members of the psychology staff at the Wisconsin Secure Program Facility, where Kalafi is an inmate. In the same order, the court granted summary judgment to defendant Craig Tom on Kalafi's claim that Tom, who presided over Kalafi's conduct hearing, was a biased decisionmaker. Dkt. 81.

Both sides seek reconsideration of that order pursuant to Fed. R. Civ. P. 59(e). *See* dkts. 84, 88. For the reasons discussed below, plaintiff's motion will be denied and defendants' motion will be granted solely with respect to their contention that I erred in finding defendant Shana Becker liable for damages with respect to Kalafi's retaliation claim.

# OPINION

## I.  Standard of Review

Rule 59(e) allows a party to move the court for reconsideration of a judgment within 28 days following the entry of the judgment. A motion for reconsideration serves a very limited purpose in federal civil litigation; it should be used only "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656 (N.D. Ill. 1982), *aff'd* 736 F.2d 388 (7th Cir. 1984)). "A 'manifest error' is not demonstrated by the disappointment of the losing party.  It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). Apart from manifest errors of law, "reconsideration is not for rehashing previously rejected arguments." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Whether to grant a motion for reconsideration "is left to the discretion of the district court." *Id*.

## II.  First Amendment/Qualified Immunity Analysis

Citing the same cases cited in their summary judgment briefs, defendants insist that Kalafi's statements in the article found in his cell were defamatory and as such, enjoy no First Amendment protection.  They go on to argue that, even if Kalafi's statements were protected, the law establishing such protection was not clearly established at the time he was disciplined, and defendants consequently are entitled to qualified immunity.

Neither of defendants' arguments persuades me that it was manifest error to find that, under clearly established law existing in 2012, Kalafi's statements were protected under the First Amendment even if defendants could prove they were defamatory. Regardless whether the Supreme Court was deciding the precise question before this court, the Court spoke plainly when it declared in *Procunier v. Martinez*, 416 U.S. 396 (1974), that "[p]rison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements." *Id*. at 413. Indeed, in 1979, the Fifth Circuit found that *Martinez* not only barred prison officials from suppressing an inmate's outside correspondence "[e]ven if it is libelous," but that the case's holding was so clear that qualified immunity was not available to the defendants. *McNamara v. Moody*, 606 F.2d 621, 624 (5th Cir. 1979). Similarly, in *Ross v. Reed*, 719 F.2d 689, 695 (4th Cir. 1983), the Fourth Circuit observed that

> in late 1979–early 1980, the law was clear that prison authorities could not as a regular practice censor inmate mail, *even if the letter unduly complains or magnifies grievances or is defamatory*; rather, as was clear, censorship—and other restrictions on inmates' first amendment rights—must be justified by using narrowly drawn means to further substantial governmental interests in security, rehabilitation, and order.

*Id*. (emphasis added). Four years later, the Third Circuit reached a similar conclusion, finding that prison officials violated an inmate's clearly established rights under *Martinez* when they punished him for making a false and defamatory statement about a female prison guard in a letter that he had written to the NAACP. *Brooks v. Andolina*, 826 F.2d 1266, 1268 (3rd Cir. 1987).

Defendants acknowledge that the facts in *Brooks* are largely indistinguishable from those in the instant case, and they do not address *Moody*. As for *Ross*, they argue that the case actually augurs in favor of qualified immunity because the court questioned whether the inmate's

3

campaign of writing letters containing false or unsupportable statements even was protected by the First Amendment and granted immunity to the defendants. *Ross*, 719 F.2d at 695.

The facts of *Ross* are inapposite. There, the inmate sent a series of letters to a state records custodian, addressed to a congressman and the news media, in which Ross accused the custodian of deliberately falsifying his parole eligibility date because she was racist and had been bribed. *Id*. at 691-92. At the time, Ross had a lawsuit pending against the custodian in which he alleged that she had violated his constitutional rights by not crediting two years during which he had escaped from prison as time served towards completion of his sentence. *Id*. at 691. Finding that the facts before it were "different in kind" from the situations encountered in *Martinez* and *Moody*, the court agreed with defendants' contention that Ross's letters were not "ordinary correspondence" but were part of "an arguably illegal effort to coerce official action by making allegations known to be false or unsupportable." *Id*. at 695-96.

In this case, by contrast, defendants make no suggestion that they disciplined Kalafi for engaging in a course of conduct aimed "to gain a benefit to which he was not entitled," as the defendants successfully argued in *Ross*. Here, defendants acknowledge that they disciplined Kalafi for making defamatory statements in his article. Under *Martinez*, *Moody* and *Brooks*, that action was plainly unlawful. Indeed, even *Ross* supports this conclusion, insofar as the court found it to be settled law as of 1980 that "prison authorities could not as a regular practice censor inmate mail, even if the letter unduly complains or magnifies grievances or is defamatory." 719 F.2d at 695.

Although it is true that this rule seems to be in tension with the general rule that defamation is not protected by the First Amendment, *see, e.g., United States v. Stevens*, 559 U.S. 460, 468 (2010) (listing defamation among various categories of speech that are not protected), it must be kept in mind that this is not a civil defamation case, but rather an attempt by defendants to justify their censorship of Kalafi's correspondence. As the Supreme Court has explained:

> The presumption against prior restraints is heavier—and the degree of protection broader—than that against limits on expression imposed by criminal penalties. Behind the distinction is a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable.

*Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558–59 (1975).

Recognizing that "censorship of prisoner mail works a consequential restriction on the First and Fourteenth Amendments rights of those who are not prisoners," 416 U.S. at 409, the Court in *Martinez* was unwilling to allow "freewheeling censorship" in the prison context, instead holding that censorship of prisoner mail required a showing that it was necessary to further a governmental interest in security, order and rehabilitation. 416 U.S. at 413-14. As noted in the summary judgment order, defendants made no attempt to justify their action on these grounds. Op. and Order, dkt. 81, at 17-18. Taken to its logical conclusion, defendants' position would authorize censorship of *any* prisoner correspondence deemed to be "defamatory," a conclusion that the Court flatly rejected in *Martinez*.

5

Finally, defendants point out that in *Hale v. Scott*, 371 F.3d 917, 918 (7th Cir. 2004), Judge Posner found, without any discussion of either *Martinez* or *Turner v. Safely*, 482 U.S. 78 (1987), that the prisoner's libelous speech in his prison grievance was unprotected under the Constitution. In defendants' view, *Hale* signals that the "starting point" for analyzing claims like Kalafi's is whether the speech is constitutionally protected, or at the very least, that the law in this area is unsettled so as to make qualified immunity available. As explained in the summary judgment order, however, *see* dkt. 81 at 16, *Hale* did not involve outgoing correspondence but rather an internal prison grievance, so it does not control here.

In sum, I am not persuaded that I committed manifest error in concluding that Kalafi's statements in his outgoing mail were protected from censorship under the First Amendment even if they were defamatory and that the law was sufficiently clear in 2012 that a reasonable official would understand that punishing Kalafi for making such statements was unlawful.

### III. Causation

As another ground for reconsideration, defendants argue that because this court speculated that defendants may have had other, non-articulated grounds on which they *could* have disciplined Kalafi apart from the statements in his letter (namely, his possession of Shana Tom's victim impact statement), they are entitled to a jury trial on the question of causation, that is, whether defendants would have disciplined Kalafi even in the absence of protected conduct. *See* Br. in Supp., dkt. 85, at 9 (citing *Green v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011)). This is a non-starter. Although *this court* speculated that defendants may have had other legitimate grounds on which they could have disciplined Kalafi apart from the content of his letter,

6

*defendants* never claimed to have been motivated by other reasons, apart from Kalafi's protected conduct, for disciplining him. The reason provided by defendants—in the conduct report, the disciplinary decision and their affidavits—was that Kalafi had lied about Becker and other staff in his letter. *See* Aff. of Lebbeus Brown, dkt. 59, at ¶10 ("I issued the conduct report for this rule violation based on the statements Felton made in his article."). There is simply no evidence in the record that defendants would have charged and found Kalafi guilty of lying about staff if it hadn't been for the statements in his letter.

## IV. Becker's Personal Involvement

Finally, defendants argue that this court should reverse its finding of liability against defendant Shana Becker because she lacked personal involvement in Kalafi's discipline. Defendants point out that Becker's involvement in the case was limited to reporting her cell-front encounter to security staff and that she did not author the conduct report, ask it to be issued or decide what charges and facts should be included in it.

Defendants raise good points, which in turn raise this question: why didn't defendants make these arguments the first time around? On the issue of personal involvement, defendants objected only as to the warden, defendant Haines; they said nothing about Becker or any other defendant. Even under defendants' *post hoc* version of the facts in which Kalafi was disciplined because he "taunted" Becker with the article, *see* Op. and Order, dkt. 81, at 12-13, it remains the case that Becker merely reported to security staff that Kalafi might have contraband in his cell; she did not issue the conduct report and she had no involvement in the disciplinary proceeding.

In other words, defendants could have raised the same arguments during the summary judgment proceeding, but apparently made a deliberate decision not to.

Nevertheless, even if the opposing party completely fails to respond to a summary judgment motion, Rule 56(e) permits judgment for the moving party only "*if appropriate*—that is, if the motion demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 332 (7th Cir. 1993) (emphasis supplied); *see also Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir. 1984). Thus, "even where many or all of the material facts are undisputed, the court still must ascertain that judgment is proper 'as a matter of governing law.'" *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994) (quoting *Glass v. Dachel*, 2 F.3d 733, 739 (7th Cir. 1993)). Upon reconsideration, I realize that I overlooked this step in awarding summary judgment against Becker.

To recover damages under 42 U.S.C. § 1983, a plaintiff must establish defendant's personal responsibility for the claimed deprivation of a constitutional right. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Kalafi argues that a jury could find personal responsibility based on Becker's alleged threat to Kalafi that he wouldn't "get away with" posting his article, the fact that she was dating Craig Tom, who ordered the search of Kalafi's cell, and the fact that Kalafi did indeed get punished for the article. In Kalafi's view, this sequence of events shows that Becker "collaborated with the right people to make sure Kalafi got punished." Dkt. 91, at 6.

Kalafi has not put forth sufficient evidence to support this theory. Notably, he admits that Becker did not have authority to order a cell search, did not issue the conduct report, did not

8

ask anyone else to issue it and did not testify at the disciplinary hearing. Kalafi has put forth no evidence to dispute Becker's sworn testimony that she thought Kalafi had copies of her victim impact statement in his cell and that her main concern in reporting the incident to security was getting those copies from him. Without more, Becker's alleged warning that Kalafi "wouldn't get away with" posting his article is too vague to be viewed as evidence of Becker's personal responsibility for the way the other defendants proceeded thereafter. Accordingly, because I am persuaded that no facts exist from which a reasonable jury could find Becker to be personally responsible for Kalafi's discipline, I am granting summary judgment to Becker on Kalafi's retaliation claim against her.[1]

## V. Due Process Claim Against Craig Tom

Kalafi asks the court to reconsider its grant of summary judgment to defendant Tom on Kalafi's claim that Tom was a biased decisionmaker because of his relationship with Shana Becker. Kalafi argues that the court erred in finding that Tom "was not aware of what he was authorizing the January 13, 2012 cell and strip search of Kalafi for." Dkt. 88, at 1. He further argues that Tom should have recused himself under governing administrative rules and that Sweeney, the supervisor with whom Tom consulted about his potential conflict of interest, was not authorized to decide whether it was proper for Tom to conduct the hearing. *Id*. Finally, he argues that he adduced sufficient evidence of bias to warrant a jury trial. *Id*.

Kalafi's arguments fail to persuade me that I committed manifest error in granting summary judgment to Tom on this claim. Kalafi's first argument appears to challenge the court's

---

[1] In light of this ruling, Kalafi will be allowed to submit new damages proffers. *See* Order, below.

finding in the summary judgment order that "Tom was not directly or substantially involved in the events underlying the disciplinary charge." Op. and Ord., dkt. 81, at 20. Kalafi insists that Tom had to know when he ordered the search of Kalafi's cell that Kalafi was reported to have contraband consisting of copies of the article and/or Becker's victim impact statement, or else he would not have ordered the search. Kalafi further maintains that it is reasonable to infer that Tom reviewed the materials at the time they were found.

Even assuming, *arguendo,* that Kalafi is correct, this would not persuade me that I erred in finding that Tom's involvement with the underlying events was tangential. Kalafi was not charged with possessing contraband. His alleged offense was making false statements about Becker and other PSU staff in his article. How that article came into the possession of prison authorities had no bearing on whether he committed that offense. Kalafi does not dispute that Tom did not issue the conduct report or that Tom did not ask that one be issued. It is undisputed that Tom was not mentioned directly or indirectly in the article. Under these circumstances, Tom's limited involvement in ordering the cell search six weeks before the conduct report was issued by Brown was not the sort of "direct or substantial" involvement in the underlying facts that would have required him to recuse himself from conducting the disciplinary hearing.

Next, Kalafi points to Wis. Admin. Code § DOC 303.82(1), which provides that members of the adjustment committee are appointed by the warden. According to Kalafi, this means that Tom should have asked the warden, not Sweeney, if Tom should recuse himself from hearing Kalafi's charge given his relationship with Becker. Kalafi further argues that a jury could infer that Tom intentionally vetted his relationship with Becker to Sweeney instead of the warden

because he wanted to preside over Kalafi's hearing (presumably so that he could find Kalafi guilty) and he knew that Sweeney would not remove him. Br. in Supp., dkt. 89, at 5.

This a new argument that Kalafi should have raised earlier (there's a lot of that going around in this case); more dispositively, it is unpersuasive. The fact that the warden "appoints" members of the adjustment committee does not establish that it was inappropriate for Tom to raise the potential conflict of interest issue with Sweeney, the institution's security director and his immediate supervisor. Even if it was, Kalafi's suggestion that Tom did so nefariously with a wink and a nudge from Sweeney piles speculation on top of speculation. This is will not suffice to defeat Tom's motion for summary judgment.

Finally, Kalafi attacks the court's reasoning leading up to the conclusion that no reasonable fact finder could conclude that Kalafi was denied due process as a result of Tom's participation in his disciplinary proceeding. This is basically a re-hash of Kalafi's summary judgment arguments that fails to reveal any manifest error. Kalafi simply disagrees with the outcome. That's understandable, but relief under Rule 59(e) is not appropriate under this circumstance.

ORDER

IT IS ORDERED that:

1. Plaintiff's motion for reconsideration, dkt. 88, is DENIED.

2. Defendants' motion for reconsideration, dkt. 84, is GRANTED IN PART and DENIED IN PART. It is GRANTED as to the implicit finding of personal responsibility on the part of defendant Shana Becker. That portion of the court's April 5, 2018 opinion and order is REVERSED and summary judgment is GRANTED in favor of Shana Becker. Defendants' motion is DENIED in all other respects.

3. The stay imposed by the court on May 10, 2018 is lifted.

4. Not later than August 3, 2018, defendants shall expunge the DOC 303.271 violation from Kalafi's disciplinary record.

5. Not later than July 13, 2018, Kalafi shall submit a revised detailed damages proffer as described in this court's April 5, 2018 order. Defendants shall have until August 3, 2018 to file a brief in response.

6. If necessary, trial on the issue of damages shall be held on Tuesday, October 9, 2018 at 9:00 a.m., with the final pretrial conference starting at 8:30 a.m. that same morning..

Entered this 22nd day of June, 2018.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge