IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

G'ESA KALAFI f/k/a STANLEY FELTON,

                Plaintiff,

v.

LEBBEUS BROWN, CRAIG TOM, and
TROY HERMANS,

                Defendants.

PRETRIAL ORDER

16-cv-847-slc

---

This case is scheduled for trial on punitive damages on March 11 and 12, 2019. Attached to this order are the court's draft jury instructions, special verdict form, and voir dire questions. The following are the court's rulings on the parties' pending motions:

**I.    Plaintiff's Motion for Reconsideration re: Nate Lindell, dkts. 160, 169**

Plaintiff asks this court to reconsider its December 26, 2018, order denying his motion for a writ ad testificandum for Nate Lindell, an inmate presently housed at the Columbia Correctional Institution. Plaintiff wants to call Lindell to authenticate several blog posts/articles that he wrote that were posted on the "Behind the Bars" website, and to confirm that defendant Brown saw the posts but did not discipline Lindell for them. This court previously denied the motion under Rule 403, but left this opening:

> If Kalafi can point to specific articles by Lindell–or any other inmate at the institution– that were sufficiently similar to Kalafi's article *and* if Kalafi has evidence establishing that any of the defendants actually saw these articles and could have disciplined the writer but chose not to, then Kalafi may present these articles to the court before trial and ask for a ruling on their admissibility. However, Kalafi does not need Lindell's testimony to do this.

Dkt. 159, at 2.

Plaintiff now has provided copies of 11 of Lindell's blog posts. Dkt. 169-2. Having

reviewed those writings, I share plaintiff's view that many of them contain derogatory and demeaning language about prison staff that is similar to that used by plaintiff in his article. For example, in Post #141, Lindell describes three guards on the seg unit at W.C.I. as having "foul, aggressive attitudes." He goes on to identify them by name, and states that "[t]hey're built large & have reputations for battering prisoners." Lindell proceeds to describe several incidents where these guards subdued other inmates by force, and accuses the guards of battery, sexual assault and misconduct in public office. Lindell writes: "Thick-skulled guards prefer using force & degradation to treat insanity & emotional disturbances....and rehabilitate, or, more accurately, dehabilitate."

In Post #204, Lindell describes a meeting with the warden, Gary Boughton, and Dr. Stacey Hoem in which they asked him to tutor other inmates, a conversation that Lindell said later turned out to be a "pack of lies." Lindell proceeds to write: "If you ever wonder why bad things happen to good people, well, you first need to get your premise right: Prison staff are not good people, and it's only karma! They reap what they've sown."

In Post #248, Lindell writes this about unnamed staff at WSPF: "Staff here, on the other hand, act like the ignorant, slovenly, crude, spiteful and amazingly proud (of what, who knows?) poor-white-trash pigs that they are."

There is more, but suffice it to say that these 11 blog posts, which plaintiff asserts were posted on the internet, are similar enough to plaintiff's that a jury could reasonably infer from the difference in treatment between Lindell and plaintiff that defendant Brown acted with malice or in reckless disregard of plaintiff's rights when he issued the conduct report at issue in this case. Although I indicated in the December 26 order that allowing plaintiff to present these
2

articles would veer into a confusing and wasteful mini-trial over the similarity between Lindell's articles and Kalafi's, upon reconsideration I am persuaded that the blog posts' probative value outweighs such concerns.

Accordingly, plaintiff's request for a writ of habeas corpus ad testificandum for Nate Lindell will be granted. Lindell may testify only as follows: (1) he can offer testimony to authenticate that he wrote the 11 posts and that they were posted on the internet; Lindell may not testify about the content of the posts because they speak for themselves; (2) he can testify about his interaction with Brown and any statements Brown made that would tend to show that Brown was aware of Lindell's blog posts; and (3) he can testify that he was not disciplined for any of the 11 posts that Kalafi has presented. The State may stipulate to any of these facts; if if it were to stipulate to all of them, then Lindell's testimony probably would not be necessary.

One final note: the court is directing Lindell to appear via video conference. The clerk has already contacted the institution and made it aware that Lindell will likely be testifying on Tuesday morning, March 12. More on this below.

II. **Plaintiff's Motion to Admit "Other Acts" Evidence by Lebbeus Brown, dkt. 170**

Plaintiff moves under Fed. R. Evid. 404(b) to present evidence concerning an incident in 2015 in which defendant Brown intercepted plaintiff's outgoing mail and, based on the content of that mail, issued him a conduct report for unauthorized use of the mail and threats. According to the documents attached to plaintiff's affidavit, dkt. 171, Brown issued the report because of statements made by Kalafi in a letter in which he asked that a person named Michael Ray be threatened, harassed or intimidated because he owed plaintiff money. Plaintiff argues

3

that the court should admit the evidence to show "absence of mistake" or "lack of accident" by Brown in 2012 when he confiscated plaintiff's article in this case and wrote him a conduct report for it.

The 2015 conduct report by Brown has nothing in common with the conduct report at issue in this case. As such, it is irrelevant and would waste the jury's time. This motion is denied.

### III. Defendants' Motion to Exclude, dkt. 149

Defendants have moved under Fed. R. Evid. 403, 404(b) and 801 to exclude evidence of "lawsuits, offender complaints, or newspaper articles relating or referring to the Wisconsin Department of Corrections or the Defendants," dkt. 149. The only evidence of this type that they have identified is offender complaints involving other inmates and allegations against defendants. *See* dkt. 101, at 13-14; dkt. 87-5. Although it appears that plaintiff does not intend to present evidence of inmate complaints, *see* dkt. 169, at 2, the court agrees that such evidence is inadmissible hearsay. Moreover, the probative value of any other inmate complaints, involving facts and circumstances different from the instant case, is outweighed by concerns of unfair prejudice, confusion of the jury and waste of time. Accordingly, defendants' motion is granted, with the caveat that it does not apply to plaintiff's motion to call Nate Lindell as a witness.

IV. **Trial Mechanics**

This case is the only jury trial on Monday, March 11, 2019, but Judge Peterson has a bench trial involving video testimony from prisoner witnesses. Because of ongoing IT work in the courtrooms, only Courtroom 360 has the capability to present video testimony. Therefore, Judge Peterson gets Courtroom 360 on Monday. This means that testimony from Kalafi's prisoner witnesses, who are appearing via video conference, cannot be presented until Tuesday, March 12. The court's plan for Monday is to pick a jury, hear opening statements and take testimony from all witnesses who are *not* appearing via video conference. This may mean that the trial day ends early. On Tuesday, the incarcerated witnesses will testify via video conference. The clerk of court has contacted the respective institutions at which Kalafi's prisoner witnesses are housed and has scheduled these witnesses for video conference testimony on Tuesday, March 12, starting with Karry Hilley at 8:30 a.m., Leighton Lindsey at 9:00 a.m., and Nate Lindell at 9:30 a.m. (Even though the inmates are scheduled in 30-minute increments, each of the institutions has blocked out an hour for the video calls, in the event the testimony goes longer than a half hour.)

At this Thursday's telephonic pretrial conference, the court would like the parties' input on this proposed schedule, the jury instructions, special verdict form and voir dire questions, as well as other trial matters they would like to bring to the court's attention.

Entered this 5th day of March, 2019.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge